# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | **2:12-cr-00175-PPS-APR** |
| | ) | |
| MINAS LITOS, *et al* | ) | |

## **OPINION AND ORDER**

The government alleges in this wire fraud prosecution that the defendants committed mortgage fraud by lining up property buyers, then misrepresenting information on loan applications submitted to banks and secretly providing the down payment funds and paying kickbacks to buyers. Defendant Minas Litos intends to argue at trial that, under Bank of America's (the predominant bank victim in this case) policies, the allegedly false information on the applications was disregarded, so even if the information was false, it couldn't possibly have influenced the Bank's decisions to issue the risky loans. To that end, Litos wants the government to turn over any evidence that it may possess indicating that the defrauded banks didn't consider and never intended to consider the allegedly false information in deciding whether to approve the loans. Litos would use these documents to argue that any false information on the applications wasn't material. Magistrate Judge Rodovich denied Litos's motion, and Litos has now appealed that ruling to me.

Because I agree with Judge Rodovich that how these banks actually used the false information relates to reliance, not to materiality, I deny Litos's request. I further deny his request because it appears to seek information possessed by governmental agencies outside of those involved in *this* prosecution, and those materials are therefore not considered to be in the possession of the government in this case for the purpose of *Brady* disclosure.

**Background**

According to the indictment, the defendants Minas Litos and Adrian Tartareanu co-owned and controlled two companies that bought and sold residential properties located mostly in Gary, Indiana. (DE 1 ¶ 1.) Tartareanu's wife, Daniela, was the office manager for one of the companies. (DE 1 ¶ 2.) The defendants convinced people to buy properties by telling them that they didn't have to put up a downpayment and the rental income would cover future costs. (DE 1 ¶ 5.) The scheme involved obtaining home loans from banks by concealing material information in various ways including: 1) submitting false information on applications; 2) providing down payments to buyers through another company Litos owned (and signing closing documents that said they hadn't done that); 3) moving money into buyers' accounts to make them appear more creditworthy; and 4) paying secret kickbacks to buyers. (DE 1 ¶ 6.) Each of the three defendants allegedly attended home closings and signed documents saying the down payments hadn't been funded by the seller. (DE 1 ¶ 2.) The fraudulently-obtained loans

totaled over $2.5 million, all of which basically went down the drain when nearly all of the buyers eventually defaulted on the loans. (DE 1 ¶ 7.)

The indictment charges the defendants with one count of conspiracy to commit wire fraud under 18 U.S.C. § 1349 (DE 1 at 3), and sixteen substantive counts of wire fraud under 18 U.S.C. § 1343. (DE 1 at 4-5.)

Litos sought an order requiring the government to provide evidence in its possession indicating that Bank of America didn't consider, and in fact never intended to consider, the allegedly false information as it reviewed loan applications. (DE 42.) There is special emphasis on Bank of America because "[f]ifteen out of sixteen substantive counts lodged against [Litos] here involved loans with" Bank of America, and because the United States has filed a civil case against that bank in North Carolina. However, Litos has added in briefing subsequent to the initial motion that he also seeks information on whether the other relevant banks involved in this case cared about false statements. (DE 68 at 3.) Here is specifically what he said: "Defendant aimed his request initially at [Bank of America] because the government lawsuit against [Bank of America] on its face suggests that the government has access to exculpatory and impeaching evidence relevant to defendant's defense; but the defendant suspects that other banks identified as victims in the conspiracy count were likely operating similarly, and evidence the government has that they were approving loans without caring about the allegedly false statements would be similarly relevant." *Id*.

In an order addressing several pretrial disclosure issues, Judge Rodovich denied Litos's motion because the information he seeks would bear on what Bank of America actually, subjectively did with the false information, not the objective nature of the information, and actual reliance isn't a required element of materiality. (DE 67 at 2-5.) Litos objects to that decision, arguing that the Seventh Circuit's recent decision in *United States v. Phillips*, 731 F.3d 649 (7th Cir. 2013), is controlling and that it requires a contrary finding. (DE 68.) The matter is now before me on Litos's appeal of Judge Rodovich's ruling.

**Discussion**

It should go without saying that prosecutors have a duty to turn over any evidence that is favorable to the defense. *United States v. Morales*, Nos. 12-3558, 13-1103, 2014 U.S. App. LEXIS 5500, at *1 (7th Cir. Mar. 25, 2014) (citing *Brady v. Maryland*, 373 U.S. 83 (1963)). *Brady* therefore mandates that the government disclose "exculpatory material known to the government *but not to the defendant*." *United States v. Mahalick*, 498 F.3d 475, 478 (7th Cir. 2007) (emphasis in original) (quoting *United States v. Dawson*, 425 F.3d 389, 393 (7th Cir. 2005).

To determine whether the evidence sought here is exculpatory, one must first understand the charges in the indictment. Section 1343 prohibits using interstate wires to obtain money or property through a fraudulent scheme or through false or fraudulent representations. "To obtain a conviction for wire fraud under section 1343, the Government must demonstrate: '(1) the defendant's participation in a scheme to

4

defraud; (2) the defendant's intent to defraud; and (3) the defendant's use of the . . . wires . . . in furtherance of the fraudulent scheme.'" *United States v. Roberts*, 534 F.3d 560, 569 (7th Cir. 2008) (ellipses in original) (quoting *United States v. Radziszewski*, 474 F.3d 480, 484-85 (7th Cir. 2007)) (additional citations omitted).

A scheme to defraud must involve material falsehoods. *Neder v. United States*, 527 U.S. 1, 20, 25 (1999). *Neder* was a case – like this one – brought under the wire fraud statute wherein the defendant was accused of fraudulently obtaining bank loans through a variety of false statements. The Supreme Court held that materiality is an element of federal fraud statutes (wire , mail and bank fraud) and the Court went on to define materiality as follows: "[A] matter is material if: '(a) a reasonable man would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question; or (b) the maker of the representation knows or has reason to know that its recipient regards or is likely to regard the matter as important in determining his choice of action, although a reasonable man would not so regard it." *Id.* at 22 n.5 (quoting Restatement (Second) of Torts § 538 (1976)).

The Seventh Circuit has defined "materiality" similarly: "[a] statement is material if it would be capable of influencing the decisionmaker's decision; . . . there is no requirement that the statement must in fact influence the decisionmaker (that would be reliance). [] Thus, the proper inquiry addresses not the defendant's ability to influence, but rather the nature of the statements made." *United States v. Reynolds*, 189 F.3d 521, 525 (7th Cir. 1999) (finding no error where the district court in fact barred the

5

defendant from presenting evidence that the bank would not have relied on his representations). What this means is that no one needs to actually be deceived to make out a federal fraud case. *United States v. Yoon*, 128 F.3d 515, 525 (7th Cir. 1997); *see also Roberts*, 534 F.3d at 571 ("The materiality inquiry addresses the *nature* of the statements made rather than the defendant's actual ability to influence the VA's decision to grant veterans' benefits." (italics in original) (citing *Reynolds*, 189 F.3d at 525)).

The Seventh Circuit Pattern Jury Instructions confirm this notion of materiality. "A false or fraudulent pretense, representation, or promise, . . . is 'material' if it is capable of influencing the decision of the person . . . to whom it was addressed. It is not necessary that the false or fraudulent pretense, representation, promise, omission, or concealment actually have that influence or be relied on by the alleged victim, as long as it is capable of doing so." Seventh Circuit Pattern Jury Instructions Criminal, 18 U.S.C. §§ 1341 & 1343, Definition of Material (bracketing omitted) (available at http://www.ca7.uscourts.gov/Pattern_Jury_Instr/7th_criminal_jury_instr.pdf at 399, last visited May 28, 2014).

Reliance by the victim on the defendants' false statements is not a necessary element under federal fraud statutes, unlike under the common law civil cause of action for fraud. *United States v. Rosby*, 454 F.3d 670, 674 (7th Cir. 2006). So "[w]hether or not a victim in fact relied upon a defendant's false representations is irrelevant in criminal fraud cases." *United States v. Ghilarducci*, 480 F.3d 542, 546 (7th Cir. 2007). What this means is that the materiality of a misrepresentation is measured against an objective

6

standard, not the subjective impression of the victim or entity – Bank of America and the other banks, in this case – to whom the false statements were made. *See United States v. Rogan*, 517 F.3d 449, 452 (7th Cir. 2008).

### A.   The Evidence Litos Seeks is Not Exculpatory

The first issue is whether the type of evidence Litos requests is exculpatory. Litos argues that a civil suit brought against Bank of America by the U.S. Attorney for the Western District of North Carolina shows that the Bank was essentially negligent to the point of complicity in reviewing loan applications and rubber-stamping them without actually verifying key information. (DE 68 at 2); *see United States v. Bank of America, et al.*, No. 3:13-cv-446 (W.D.N.C.) (filed Aug. 6, 2013). He also surmises that the other victim banks were operating similarly, and he wants the U.S. Attorney for the Northern District of Indiana to furnish him with information indicating as much. (DE 68 at 3.) Litos wants the government to provide evidence that will bolster his argument that the allegedly false information was not of a kind the lenders actually relied on, so the false information was not capable of influencing the banks' decisions – in other words, that the information was not material. (DE 68 at 9.)

Notably, Litos argues that the false information "is of a kind that **the bank** *would not* rely on." *Id.* (bolding added, italics in original). But that statement is problematic in two ways. First, it impermissibly injects reliance into the definition of materiality. But more to the point, by referencing *the* bank (i.e., Bank of America) as opposed "a bank" or "a reasonable lender," Litos incorrectly turns the standard from an objective one to a

7

subjective one. And doing so skips over the first branch of the materiality definition: whether "'a reasonable man would attach importance to [the matter's] existence or nonexistence in determining his choice of action in the transaction in question.'" *Neder v. United States*, 527 U.S. 1, 22 n.5 (1999) (quoting Restatement (Second) of Torts § 538 (1976)). This means that what the banks actually did here is irrelevant to materiality, which is subject to a reasonable person standard.

Litos also twists the second part of the definition of materiality, which states that information is material if "'the maker of the representation knows or has reason to know that its recipient regards or is likely to regard the matter as important in determining his choice of action, although a reasonable man would not so regard it.'" *Id.* That is not the same as saying that information is *not* material if the misrepresenter knows the recipient *doesn't* regard the matter as important, although a reasonable man *would* so regard it. Furthermore, the second branch of the definition requires that the misrepresenter *know* that the recipient of the information views the information differently than the reasonable person. What we all now know about the banks' mortgage dereliction during the relevant period doesn't shed any light on what the *defendants* knew when they allegedly provided false information on loan applications.

The type of evidence Litos describes in his request, information showing that the victim banks in this case actually gave no weight to the defendants' allegedly false statements, would not exculpate him. Litos can't get a free pass on false statements of a kind that would normally matter in a lending decision, made because they are normally

important, and made in order to induce banks to lend money, simply because, unknown to Litos, the statements didn't actually affect the decisions at issue in this case. Put simply, the fact that the fraud was a lot easier to commit than the defendants expected doesn't mean that the defendants didn't intend to commit fraud, or that the information wasn't objectively material with respect to a loan application.

Additionally, the fact that the banks didn't rely on the truth of the information doesn't mean that they didn't rely on the information – they likely needed to see certain numbers on the applications to make the loans, and the defendants allegedly provided those numbers to induce the banks to lend, even if the loan officers then played along despite smelling something rotten on the applications. And even if the banks risked nonrepayment of the loans in not checking the information, the parties filling out the forms were still obligated to provide truthful information.

Litos hangs his hat on *Phillips*, so that case warrants discussion. The two defendants there were convicted under 18 U.S.C. § 1014 of knowingly making false statements to a federally insured bank for the purpose of influencing its action, in their case to give the defendants a mortgage. *United States v. Phillips*, 731 F.3d 649, 650 (7th Cir. 2013). The *Phillips* defendants were turned down by one bank because one of the joint applicants had a recent bankruptcy and the defendants' joint monthly income was deemed too low. *Id.* at 650. They turned to an acquaintance for help, and he turned out to be a "crook" (the Seventh Circuit's term) who steered them to a disreputable bank and encouraged them to lie on their application. *Id.* at 650. The Seventh Circuit's

decision turned on what the crook told the defendants that might have rendered their actions unblameworthy, and the fact that what he told them was excluded from the trial by the trial judge. At the crook's urging the defendants applied "to a federally insured bank of dubious ethics" and only listed on the loan application the one of them who hadn't recently gone through bankruptcy, but they combined their income for the gross monthly income line of the application. *Id.* at 650, 653. The defendants got the loan and bought the house, then were unable to make the payments and lost it. *Id.* at 651. The trial judge "excluded, as irrelevant, evidence that might have persuaded the jury that the defendants either had not made statements they knew to be false or, though knowing the statements to be false, hadn't made them for the purpose of influencing the bank's action on their mortgage application." *Id.* at 651.

The Seventh Circuit found that the trial court had erred in excluding testimony about what the crook told the defendants, which might have shown that the defendants didn't actually think the statements were false, or that they didn't think the statements would make a difference to the bank. *Id.* at 651-53. The defendants wanted to testify that, based on what the crook told them, they thought that the bank wanted to make sure someone with good credit was going to be responsible for the loan (so they only had to list the person who hadn't gone through bankruptcy). They further wanted to show that they believed the monthly income line was really asking for the total income available to pay the mortgage, not just the listed applicant's income, and the bank wouldn't care *whose* income was aggregated so long as it would be used to pay. That

could have allowed the jury to find that the defendants didn't intend their lies to influence the bank, and the defendants thought they accurately gave the information the bank really cared about. *Id.* at 653. Unlike § 1343, § 1014 doesn't require a showing of materiality, but the defendants' beliefs about the materiality of the statement *when it's made* bear on the defendants' intent to influence the bank; a lie about something trivial that clearly *wouldn't* influence the bank probably wasn't intended to. *Id.* at 652.

Notably, the Seventh Circuit acknowledged that "even if the bank didn't care what was on the loan application, the defendants could have thought they were influencing the bank – and a purpose to influence is an element of the crime (though, to repeat, only if the influence is exerted through knowingly false statements.)" *Id.* at 655. There's no hint in *Phillips* that anything the bank does can exculpate the defendants, just that the crook's encouragement of and justification for the wrong might exculpate them. Throughout the opinion there are examples of circumstances that would exculpate the defendants, but they all turn on the defendants' beliefs, when they made the false statements, about whether their statements were false and whether they would influence the bank.

So while the subject matter (subprime mortgages) is the same as in our case, the circumstances of the *Phillips* defendants and the evidence they sought to introduce are not germane. *Phillips* doesn't directly address how materiality is determined (because it's not an element of § 1014), and it doesn't attribute any significance, in terms of elements of the crime, to the bank's faulty lending practices. In fact, if one believes the

11

allegations in the indictment, Litos and the Tartareanus are more like the "crook" in the story who encouraged the falsehoods, facilitating loans and encouraging dishonest applications, than like the *Phillips* defendants.

If Litos wants to argue that another middleman or the banks' loan officers with whom he dealt told him something to encourage his false statements, or that he knew or believed something about the banks' loan policies, that renders him blameless for making false statements, under *Phillips* he will be welcome to make that argument. Such evidence would be relevant to whether the defendants acted with an intent to defraud. But the more sweeping request by the defendants for evidence that the Bank of America would routinely not rely upon the pertinent information in making loans has no relevance to this case and is therefore not exculpatory.

### B. The Prosecutor Doesn't Possess the Specific Evidence Litos Requests

Presume for the moment that the material sought here is exculpatory. The issue would then become whether the U.S. Attorney in this district has an obligation to seek out exculpatory evidence that is not presently in his possession. "As a general rule, the prosecution's obligation in a criminal proceeding to disclose information is limited to information known to the prosecution." *United States v. Young*, 20 F.3d 758, 764 (7th Cir. 1994) (citations omitted); *United States v. Moore*, 25 F.3d 563, 569 (7th Cir. 1994). In other words, "prosecutors are not usually required to seek out information which is not in their possession." *Moore*, 25 F.3d at 569 (internal quotation marks and citation omitted). What's more, "evidence is not 'suppressed' if the defendant knew of the evidence and

could have obtained it through the exercise of reasonable diligence." *United States v. Walker*, No. 13-2145, 2014 U.S. App. LEXIS 5462, at *10 (7th Cir. Mar. 25, 2014) (citing *United States v. Dimas*, 3 F.3d 1015, 1018-19 (7th Cir. 1993)); *see also United States v. Senn*, 129 F.3d 886, 893 (7th Cir. 1997) (same). "The government's duty to disclose favorable evidence extends beyond evidence in its immediate possession to evidence in the possession of other actors assisting the government in its investigation." *Walker*, 2014 U.S. App. LEXIS 5462, at *10. But that duty only extends to investigators assisting in the current prosecution, not every government actor everywhere. *United States v. Morris*, 80 F.3d 1151, 1169 (7th Cir. 1996); *see also United States v. Pelullo*, 399 F.3d 197, 217 (3d Cir. 2005).

Litos knows about Bank of America's shoddy lending practices, and the prosecution in this case has indicated it doesn't have information about civil suits filed against banks in other jurisdictions. There is no particular reason that the prosecutors in this case would have that information; the banks aren't targets in this prosecution, and the banks' practices aren't relevant to an element of the crimes charged in this case. *See supra*. Litos is in a position to pursue information about troubling bank policies himself through reasonable diligence. Litos knows about the pre-2008 subprime lending bonanza (as does nearly anyone who hasn't just emerged from under a rock). The government isn't suppressing this information. Litos can subpoena Bank employees if he thinks they will provide relevant testimony.

Additionally, based on the limited information provided in the prosecution's briefing, the specific information that Litos identifies about the civil case against Bank of America seems entirely outside this prosecution team's possession, on top of its irrelevance: the civil case against the Bank that Litos references was brought by the U.S. Attorney for the Western District of North Carolina, the FBI wasn't involved in that investigation (and was the only federal agency involved in this case with the prosecutor, working alongside the Indiana State Police), there has been no investigative contact between the Indiana investigative team and the North Carolina team, the North Carolina case involved only "jumbo loans" so couldn't have included any of the loans at issue here, and, in any event, none of the Bank employees interviewed for the North Carolina case indicated that the Bank approved loans without considering the creditworthiness of the applicants. (DE 59 at 11-12.) So the specific information Litos points to in his request is not in the possession or control of the prosecutor in this case, didn't involve the loans at issue in this case, and hasn't yielded the exculpatory information Litos expects. The U.S. Attorney for the Northern District of Indiana is under no obligation to demand that his independent counterpart in the Western District of North Carolina turn over irrelevant and non-exculpatory investigation documents unrelated to the investigation and prosecution of this case in the Northern District of Indiana.

\* \* \*

To sum up: information about the banks' actual neglect is not relevant to the materiality of the defendants' alleged falsehoods. Materiality is generally objective, and is only subjective when the decisionmaker *does* care about something a reasonable person *wouldn't*, not a negation of that (when she *doesn't* care about something a reasonable person *would*). Evidence on this general subject could, however, be relevant and exculpatory with respect to intent rather than materiality. For example, evidence that the defendants were told by someone, whether at the bank or otherwise, that what they put down on the loan applications didn't matter to the bank could negate an intent to defraud. Such evidence, to the extent it exists, is therefore included within the prosecution's *Brady* obligations. Accordingly, the government is ordered to turn over any documents or evidence it may have falling into that category.

## CONCLUSION

**THEREFORE** I hereby **ORDER** the United States Attorney for the Northern District of Indiana to provide to the defendants exculpatory information as described in this Order. However, I **DENY** defendant Litos's specific request for reconsideration of the Magistrate Judge's denial of Litos's request for "all the evidence in [the Government's] control and reach that would tend to show or lead to evidence that would tend to show that the principal alleged victim in this case, the Bank of America, 'did not and never intended to consider the information charged as fraudulent in the Indictment when it came to approving certain residential loans,'" (DE 68, 42) or that "the bank was not concerned with creditworthiness." (*Id.*) I similarly **DENY** Litos's

15

request for "evidence the government has that [the other relevant banks, too,] were approving loans without caring about the allegedly false statements." (DE 68.)

**SO ORDERED.**

ENTERED: May 28, 2014

/s/ Philip P. Simon<br>
**PHILIP P. SIMON, CHIEF JUDGE**<br>
**UNITED STATES DISTRICT COURT**