UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) CAUSE NO. 2:12-CR-175-PPS-APR |
| v. | ) |
| | ) |
| MINAS LITOS, | ) |
| ADRIAN TARTAREANU, | ) |
| DANIELA TARTAREANU, | ) |
| | ) |
| Defendants. | ) |

## OPINION AND ORDER

On February 9, 2016, I sentenced Minas Litos, Adrian Tartareanu, and Daniela Tartareanu following Litos' plea of guilty and the Tartareanus' convictions at trial for wire fraud and conspiracy to commit wire fraud in association with their fraudulent mortgage business. A day prior to the sentencing, I held an evidentiary hearing on the issue of Bank of America's requested restitution for 16 properties in the amount of $893,015, among other issues. After hearing the evidence and argument presented by the parties, I reserved judgment on the issue of restitution to allow time for additional briefing on the issue. [DE 257.] The Government filed a second memorandum in support of its restitution request and none of the defendants filed additional oppositions.[1] [DE 273.] For the reasons discussed below, I order the defendants to pay restitution to Bank of America in the amount of $893,015.

---

[1] The Government and Mr. Litos filed memoranda on the restitution issue prior to the February 8, 2016 evidentiary hearing. [DE 245, 246.]

The charges against the defendants arose from a mortgage fraud scheme in which the defendants and others recruited unqualified home buyers and gave them down payment money, which was hidden from the title companies and the lenders, including Bank of America. The buyers defaulted on almost all of the loans, which triggered foreclosure of the properties held as collateral. Many of the foreclosed properties were later sold at sheriff sales at substantial losses to the note holders. The Government worked with Bank of America to calculate its specific losses resulting from the defendants' mortgage fraud and submitted to the Court at the evidentiary hearing a declaration of financial losses along with a spreadsheet showing how they arrived at a final loss calculation of $893,015. [Sentencing Exs. 4-5.] This number was calculated by adding the unpaid loan balance and delinquent interest and subtracting whatever amount of money Bank of America received in selling the home. [*Id.*]

The Mandatory Victim Restitution Act, or MVRA, requires the court to award restitution to identifiable victims of certain crimes, including crimes of fraud, without regard to the economic circumstances of the defendant. 18 U.S.C. § 3663A(a)(1), (c)(1)(A)(ii); *id.* § 3664(f)(1)(A). The MVRA defines a "victim" as "a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered including, in the case of an offense that involves as an element a scheme, conspiracy, or pattern of criminal activity, any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern." 18 U.S.C. § 3663A(a)(2). "Direct and proximate harm means that the loss would not have

occurred 'but for' the offense and that it was 'foreseeable.'" *United States v. Clark*, 787 F.3d 451, 463 (7th Cir. 2015).

The purpose of the MVRA is to "compensate victims for their losses." *United States v. Robers*, 698 F.3d 937, 942 (7th Cir. 2012). The MVRA requires a defendant to pay the victim "an amount equal to . . . the value of the property . . less the value (as of the date the property is returned) of any part of the property that is returned." 18 U.S.C. § 3663A(b)(1)(B). For cases like this one, where cash is the property taken, "the restitution amount is reduced by the eventual cash proceeds recouped once any collateral securing the debt is sold." *Robers*, 698 F.3d at 942. The MVRA also provides for reimbursement of lost income "and other expenses incurred during participation in and investigation of prosecution of the offense or attendance at proceedings related to the offense." 18 U.S.C. § 3663A(b)(4). In mortgage fraud cases, expenses to safeguard, keep up, and dispose of the collateral that secured the loan as well as interest should be included in the restitution award. *Id.* at 955; *United States v. Shepard*, 269 F.3d 884, 886 (7th Cir. 2001).

In this case, the defendants hid the fact that they were the true source of the home buyers' down payment funds, a fact that if disclosed to Bank of America, would have caused Bank of America to deny the subject loans. [Sentencing Ex. 4 at ¶7.] Bank of America's harm, therefore, is directly connected to the defendants' illegal conduct. This loss also was foreseeable. The Government cites to a First Circuit case with extremely similar facts, which I find persuasive. In *United States v. Soto*, 799 F.3d 68 (1st

3

Cir. 2015), the defendant suggested that the defrauded lenders did not care about the information on the loan applications because the loans were going to be resold in securities, meaning that the defendant's fraud could not be the proximate cause of the lenders' harm. *Soto*, 799 F.3d at 90. The court noted that "[t]here is no requirement that there only be one proximate cause" and "[t]hat the lenders' own greed and market practices at the time may have contributed to the loss has nothing to do with whether the entire loss amount was foreseeable to [the defendant]." The court also noted the defendant's in-depth knowledge of the real estate market and the lenders' market practices in finding that the district court's determination that the entire loss was foreseeable to the defendant was not clearly erroneous.

In this case, the defendants have a great deal of experience in real estate and took advantage of lenders' practices at the time. The defendants sold homes to individuals they knew were unqualified buyers as evidenced by the fact that they paid the buyers kickbacks to ensure the buyers made the first two loan payments to prevent the lenders from blacklisting the defendants. It was easily foreseeable to the defendants that these buyers would default on their loans. Defendants are, therefore, a proximate cause of Bank of America's loss.

At the evidentiary hearing, the issue of Bank of America potentially being a co-conspirator with the defendants due to its market practices, thereby barring restitution, was raised. The Government responds that Bank of America could not be a co-conspirator in the defendants' mortgage fraud scheme because it did not participate in

4

the kickbacks to buyers or provide false information on loan applications – essentially hiding the down payment information from itself to defraud itself into paying money it knew it likely would not recoup. [DE 273 at 5.] I agree. Bank of America was, in fact, the *object* of the conspiracy between the defendants. To the extent that Bank of America was involved in a fraudulent scheme, it would have been the transfer of the loans it financed to Fannie Mae, knowing that the loan applications contained false information. The scheme that Bank of America was allegedly involved in was not one to lose its own money – the offense of conviction. *See United States v. Ojeikere*, 545 F.3d 220, 222 (2d Cir. 2008) (affirming restitution order where, despite their greedy or dishonest intentions, the victims were not involved in the offense of conviction, which was a fraudulent scheme to obtain money from them).

For these reasons, I impose restitution in the amount of **$893,015 to be paid to Bank of America**. The defendants are **jointly and severally liable** for the restitution ordered.

**SO ORDERED.**

Entered: May 16, 2016

                                             s/ Philip P. Simon
                                            PHILIP P. SIMON, CHIEF JUDGE
                                            UNITED STATES DISTRICT COURT